IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| LADONNA PINKNEY, | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO.: CV214-075 |
| WINN-DIXIE STORES, INC., | : | |
| Defendant. | : | |

## O R D E R

This matter comes before the Court for the resolution of several motions filed by Defendant: a Motion to Compel Medical Records from Non-Party (Doc. 44), a Motion to Compel Witness Statements (Doc. 50), a Motion for Extension of Time to Obtain Additional Records in Response to Subpoenas (Doc. 51), and a Motion for Protective Order as to Subpoenas (Doc. 52). Plaintiff has filed Responses to all but the Motion to Compel Medical Records from Non-Party (Doc. 44). (Docs. 53–55.) For the reasons that follow, Defendant's unopposed Motion to Compel Medical Records from Non-Party (Doc. 44) is **GRANTED**, such that nonparty Southeast Georgia Physician Associates must produce the subpoenaed documents **within ten (10) days** of receiving service of this Order. Defendant's Motion to Compel Witness Statements (Doc. 50) is **GRANTED IN PART and DENIED IN PART** as follows: Plaintiff must produce, **within ten (10) days** of the date of this Order, a privilege log for the witness statements that Plaintiff has withheld on the basis of privilege or protection, but Plaintiff need not produce those statements themselves and is not prohibited from calling those witnesses at

trial. Defendant's Motion for Extension of Time to Obtain Additional Records in Response to Subpoenas (Doc. 51) is **GRANTED**, and the Scheduling Order in this case is modified, as set forth herein, to extend the period of discovery until April 13, 2015. Finally, Defendant's Motion for Protective Order as to Subpoenas (Doc. 52) is **DISMISSED** as prematurely filed.

## BACKGROUND

Plaintiff filed this slip-and-fall action against Defendant on March 20, 2014. (Doc. 1, Ex. A, p. 4.) Plaintiff alleges that her fall in Defendant's grocery store was caused by a leaking freezer cooler. (Id. at Ex. A, pp. 2–3.) Plaintiff contends that her fall resulted in permanent physical and mental injuries that require substantial medical treatment. (Id. at Ex. A, p. 3.) Based on these allegations, Plaintiff seeks compensation for her injuries as well as her past and future medical expenses, which Plaintiff alleges to have incurred from Southeast Georgia Health System, Southeast Georgia Radiology, Dr. Darrin A. Strickland, Summit Sports Medicine, and Georgia Emergency Associates. (Id. at Ex. A, p. 4.)

Plaintiff served Answers to Interrogatories on April 29, 2014, and Initial Disclosures on June 23, 2014, both of which added the following providers to this list: Southeastern OB/GYN, Brunswick Orthotics & Prosthetics, and Bone & Joint Institute of South Georgia. (Doc. 50, Ex. A, pp. 1, 6; Doc. 54, p. 2.) Plaintiff's Initial Disclosures also informed Defendant that her potential witnesses included "[a]ll current and former employees of Defendant" who were on duty at the store in question on the day of Plaintiff's fall, who had repaired coolers at that store, who had received training on incident reports at that store, or who had reported slipping on water at that store. (Doc. 50, Ex. A, pp. 2–3.) As discovery progressed, Defendant learned from other sources that Southeast Georgia Physician Associates and Key Health also were involved in

Plaintiff's medical treatment and expenses, though the parties dispute at what point in the discovery period Defendant obtained this information. (See Doc. 51, p. 2; cf. Doc. 54, p. 3.)

On October 22, 2014, Defendant served a Second Request for Production of Documents asking Plaintiff to produce any witness statements she had obtained from Defendant's current and former employees. (Doc. 50, p. 2, Ex. B.) Plaintiff objected to Defendant's request "to the extent that [it] [sought] documents containing information that constitutes the work product or trial preparation materials of Plaintiff's attorneys or other representatives or reflect the mental impressions . . . of Plaintiff's attorneys or other representatives." (Id. at Ex. B, p. 2.) Defendant then asked Plaintiff to provide a privilege log for the witness statements withheld (id. at Ex. C, p. 1), which Defendant contends Plaintiff never provided. (Id. at p. 2.)

Defendant also served subpoenas on Plaintiff's medical providers, requesting that they produce all records relating to Plaintiff's medical treatment and bills. (See Doc. 44, p. 2; Doc. 51, p. 2.) On December 29, 2014, Southeast Georgia Health System responded to a subpoena dated December 1, 2014, stating that it could not disclose Plaintiff's medical records to Defendant without a signed authorization from Plaintiff, pursuant to the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) ("HIPAA"). (Doc. 44, Ex. A, pp. 1–3.) Defendant had asked Plaintiff to execute a HIPAA authorization for Southeast Georgia Health System (id. at Ex. B, p. 1), but Defendant maintains that Plaintiff ignored its requests (id. at p. 2). In addition to Southeast Georgia Health System, Defendant contends that it never received any records from Southeastern OB/GYN, Southeast Georgia Physician Associates, and Key Health in response to outstanding subpoenas. (Doc. 51, p. 2.)

Also on December 29, 2014, Plaintiff sent Defendant copies of subpoenas that were directed to Dr. Ralph Morales ("Dr. Morales") and his professional corporation, Southern Orthopaedics & Sports Medicine, P.C. ("Southern Orthopaedics"), whom Defendant retained to perform an independent medical examination of Plaintiff during the discovery period. (Doc. 52, p. 1, Ex. A.) The subpoenas requested certain medical records and were not signed. (Id. at Ex. A.) According to Defendant, the requests were unduly burdensome or outside the scope of discovery. (Id. at p. 5.)

Seeking the Court's resolution of these outstanding discovery matters, Defendant filed the instant Motions before the February 12, 2015 close of discovery. (See Docs. 44, 50–52.) Specifically, Defendant filed a Motion to Compel Medical Records from Non-Party on January 16, 2015, requesting a Court Order that would enable Southeast Georgia Health System to produce Plaintiff's medical records, without an authorization, in compliance with HIPAA. (Doc. 44, p. 3.) Defendant then filed a Motion to Compel Witness Statements, dated February 10, 2015. (Doc. 50, p. 5.) In this Motion, Defendant sought a Court Order requiring Plaintiff to produce the statements obtained from any witness or a privilege log reflecting the same. (Id. at pp. 1, 4.) In the alternative, Defendant sought an Order preventing these witnesses from testifying at trial. (Id. at p. 4.) On February 11, 2015, Defendant filed a Motion for Extension of Time to Obtain Additional Records in Response to Subpoenas, seeking to extend the discovery period in light of its outstanding subpoenas to Southeast Georgia Health System, Southeastern OB/GYN, Southeast Georgia Physician Associates, and Key Health. (Doc. 51, p. 2.) Finally, on February 12, 2015, Defendant filed a Motion for Protective Order as to Subpoenas, in which Defendant asks the Court to quash or modify Plaintiff's subpoenas directed to Dr. Morales and Southern Orthopaedics. (Doc. 52, p. 5.)

The Court will address Defendant's request to extend the discovery period in its Motion for Extension of Time to Obtain Additional Records in Response to Subpoenas (Doc. 51) before considering Defendant's other pending Motions in the order in which they were filed (Docs. 44, 50, 52).

## DISCUSSION

**I. Defendant's Motion for Extension of Time to Obtain Additional Records in Response to Subpoenas (Doc. 51)**

Defendant argues that the Scheduling Order in this case should be modified to allow for an extended discovery period. (Id. at p. 3; see also Doc. 24, p. 1 (showing February 12, 2015, as the close of discovery).) Defendant relies on Federal Rule of Civil Procedure 16(b)(4) for the proposition that a scheduling order may be modified for good cause and with the judge's consent. (Doc. 51, p. 2 (citing Fed. R. Civ. P. 16(b)(4)).) Defendant argues that Plaintiff had a knee arthroscopy on October 7, 2014, which has delayed Defendant's completion of discovery in this case. (Id. at p. 1.) For example, Defendant deposed Plaintiff's arthroscopy surgeon, Dr. Christopher E. Swanson ("Dr. Swanson"), on November 7, 2014, but Dr. Swanson's time constraints were such that the deposition could not be completed until January 15, 2015. (Id. at pp. 1–2.) In addition, Defendant maintains that its discovery efforts revealed additional medical providers not disclosed by Plaintiff and that it did not learn of Key Health's involvement in the payment of Plaintiff's medical bills until January 15, 2015. (Id. at p. 2.) According to Defendant, Key Health, Southeast Georgia Physician Associates, Southeast Georgia Health System, and Southeastern OB/GYN have not provided records in response to Defendant's subpoenas, and additional time is necessary for Defendant to obtain these records and to pursue follow-up discovery. (Id. at pp. 2–3.)

In her Response, Plaintiff urges the Court to deny Defendant's Motion, because Defendant already received two extensions of time to complete discovery and has failed to diligently conduct discovery. (Doc. 54, p. 1.) In support of these contentions, Plaintiff states that Defendant did not schedule an adequate amount of time with Dr. Swanson to complete his deposition on November 7, 2014, and did not promptly make arrangements to do so on a later date. (Id. at pp. 1–2.) Furthermore, according to Plaintiff, Defendant misrepresents that it only recently learned of certain medical providers: Defendant learned of all providers other than Key Health and Southeast Georgia Physician Associates through Plaintiff's Answers to Interrogatories served on April 29, 2014 (id. at p. 2), and Defendant was aware of the existence of Key Health at least as early as December 15, 2014, when Defendant served its Third Request for Production seeking "[a]ny and all contracts, agreements, correspondence or other documentation to or from Key Health" (id. at pp. 2–3, Ex. B). Noting that Key Health is not a medical provider with medical records, Plaintiff concludes that, in any event, Defendant's failure to complete discovery within the allotted time is attributable only to its own lack of due diligence. (Id. at pp. 2–3.)

Under Federal Rule of Civil Procedure 16(b) ("Rule 16(b)"), a district court must issue a scheduling order limiting the time for parties to complete discovery. Fed. R. Civ. P. 16(b)(3)(A). Once the court issues a scheduling order, it "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" standard "precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16(b) advisory committee's note); see also id. ("If [a] party was not diligent, the [good cause] inquiry should end." (alterations in original) (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d

6

604, 609 (9th Cir. 1992))). Even if the good cause requirement is met, it is within the judge's discretion whether to consent to the modification. See Rowell v. Metropolitan Life Ins. Co., 579 F. App'x 805, 807 (11th Cir. 2014) ("Once a scheduling order is set, a district court 'may' amend the order, but is under no obligation to do so.").

The Court is not persuaded that the delay in completing Dr. Swanson's deposition supports extending the discovery deadline. Defendant completed the deposition of Dr. Swanson on January 15, 2015, before the close of discovery on February 12, 2015. (Doc. 51, p. 2; see also Doc. 24, p. 1.) Furthermore, Defendant does not contend that Dr. Swanson's deposition gave rise to additional, follow-up discovery that could not be obtained before the discovery deadline. Accordingly, the undersigned need not reach the parties' arguments as to whether Defendant was diligent in scheduling the deposition. Because the discovery deadline was met—regardless of Defendant's diligence or lack thereof—any delay in completing Dr. Swanson's deposition would not constitute good cause to modify the close of discovery in the Scheduling Order.

Nevertheless, there appears to be good cause to extend the discovery deadline based on Defendant's outstanding subpoenas. Indeed, Defendant was unable to obtain all of Plaintiff's medical and financial records relevant to her claims before the February 12, 2015 discovery deadline, despite diligently pursuing discovery of these records. For example, it appears that Defendant only recently learned of Key Health's existence—which, though disputed, appears to have occurred around December 15, 2014, based on Defendant's Third Request for Production (Doc. 54, Ex. B)—and Defendant already had served a request for documents on Key Health when it filed this Motion on February 11, 2015 (Doc. 51, pp. 2–3).[1] And while Defendant

---

[1] While Plaintiff argues that Key Health is not a medical provider and thus has no relevant medical documents (Doc. 54, pp. 2–3), Key Health was involved in the payment of Plaintiff's medical bills and, therefore, may have financial records relevant to Plaintiff's damages claims. For this reason, Defendant's

7

learned of Southeast Georgia Health System much earlier, through Plaintiff's Complaint filed March 20, 2014 (Doc. 1, Ex. A, p. 4), and Answers to Interrogatories on April 29, 2014 (Doc. 54, p. 2), the record shows that Defendant attempted on multiple occasions from May to November 2014 to secure a HIPAA authorization from Plaintiff (Doc. 44, Ex. B), before finally serving this provider with a subpoena dated December 1, 2014 (id. at Ex. A, p. 3). Furthermore, upon Southeast Georgia Health System's refusal to produce the requested documents on December 29, 2014 (id. at Ex. A, p. 2), Defendant promptly filed a Motion to Compel Medical Records from Non-Party on January 16, 2015 (id. at p. 3). While it is unclear when Defendant served subpoenas on Southeastern OB/GYN and Southeast Georgia Physician Associates, Defendant's discovery efforts with regard to Key Health and Southeast Georgia Health System provide a sufficient foundation upon which this Court can conclude that Defendant acted diligently in serving subpoenas for medical and financial records. After serving the subpoenas, Defendant had no control over the providers' compliance, and, upon realizing that the providers likely would not comply within the discovery period, promptly filed the instant Motion before that period expired. (See Doc. 51, p. 3.) On these facts, the Court finds that the February 12, 2014 discovery deadline was not met despite Defendant's diligence during the discovery period, and, accordingly, there is good cause to modify the Scheduling Order in this case.

That the Court has amended this portion of the Scheduling Order twice before does not change this result. It is true that the Scheduling Order originally set an October 15, 2014 discovery deadline (Doc. 9, p. 1) and that the Court since has extended that deadline to December 14, 2014 (Doc. 17, p. 1), and then to February 12, 2015 (Doc. 24, p. 1). However, Plaintiff's emphasis on this fact is misplaced. Rule 16(b)'s "good cause" standard focuses on a

---

inability to obtain the requested records from Key Health is relevant in determining whether there is good cause to extend the discovery period in the Scheduling Order.

party's inability to meet the applicable deadline despite exercising diligence. While previous deadline extensions undermine a party's diligence in some cases, the undersigned finds that such is not the case here.

Based on a finding of good cause, and in the interest of allowing the parties to fully prepare their case, the undersigned finds adequate reason to modify the Scheduling Order to provide additional time for the parties to complete discovery. Accordingly, Defendant's Motion for Extension of Time to Obtain Additional Records in Response to Subpoenas is **GRANTED**. The Scheduling Order in this case is amended as follows:

| | |
|---|---|
| CLOSE OF DISCOVERY | April 13, 2015 |
| LAST DAY FOR FILING **ALL** CIVIL MOTIONS, INCLUDING <u>DAUBERT</u> MOTIONS, BUT **EXCLUDING MOTIONS IN LIMINE** | May 13, 2015 |
| PRE-TRIAL ORDER DUE | July 12, 2015 |

Because the Court is extending discovery for the third time, based on Defendant's inability to obtain Plaintiff's medical records, the Court stresses to the parties and their counsel that the Court expects the parties to work cooperatively to obtain and exchange discoverable materials and to complete discovery in this case. The Court will not tolerate further delay in the discovery process due to gamesmanship or obstructionist tactics employed by either party.

## II. Defendant's Motion to Compel Medical Records from Non-Party (Doc. 44)

In its first Motion to Compel, Defendant seeks an Order from this Court compelling Southeast Georgia Health System to produce, within ten days of the Order, Plaintiff's medical records in response to Defendant's subpoena dated December 1, 2014. (<u>Id.</u> at pp. 1–2, Ex. A.) Defendant explains that Southeast Georgia Health System has refused to disclose Plaintiff's

medical records without a HIPAA authorization from Plaintiff, which Defendant has requested but never received. (Id. at p. 2, Ex. B.) According to Defendant, Plaintiff's medical records are relevant and discoverable, because Plaintiff, in filing this personal injury action, placed her medical condition at issue. (Id. at pp. 1–2.) Even without a HIPAA authorization, Defendant argues that Southeast Georgia Health System may produce Plaintiff's medical records in compliance with HIPAA "in the course of any judicial or administrative proceeding . . . [i]n response to an order of a court." (Id. at p. 2 (quoting 45 C.F.R. § 164.512(e)(1) (2015)).) Plaintiff did not file any response to this Motion, and Plaintiff has not filed a Motion to Quash Defendant's subpoena.

The HIPAA statute provides penalties for "[a] person who knowingly and in violation of [HIPAA] (1) uses . . . a unique health identifier; (2) obtains individually identifiable health information relating to an individual; or (3) discloses individually identifiable health information to another person." 42 U.S.C. § 1320d-6 (2014). As the HIPAA regulations clarify, the general rule of the HIPAA statute is that "[a] covered entity . . . may not use or disclose protected health information, except as permitted or required by [these regulations]." Murphy v. Dulay, 768 F.3d 1360, 1368–69 (11th Cir. 2014) (quoting 45 C.F.R. § 164.502(a)); see also id. at 1369 (stating that "covered entities" include "health plans, health care clearinghouses, and certain health care providers" (citing 45 C.F.R. § 160.102(a))). One of the exceptions to the general rule provides for the disclosure of an individual's medical information "pursuant to and in compliance with a valid authorization" from that individual. 45 C.F.R. § 164.502(a)(1)(iv). Another exception allows disclosure, without the written authorization of the individual, "in the course of any judicial or administrative proceeding." Murphy, 768 F.3d at 1369 (quoting 45 C.F.R. § 164.512(e)(1)). A covered entity may make a disclosure under this exception in response to "an

order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order." 45 C.F.R. § 164.512(e)(1)(i); see also United States v. Wilk, 572 F.3d 1229, 1236 (11th Cir. 2009) ("HIPAA authorizes the disclosure of confidential medical records for law enforcement purposes, or in the course of a judicial proceeding, in response to a court order or grand jury subpoena.").

Southeast Georgia Health System is a health care provider covered by the HIPAA statute and, therefore, cannot disclose Plaintiff's medical records to Defendant, unless an exception applies. Plaintiff has put her medical condition at issue in this case, yet it appears that Plaintiff has refused to fully cooperate in the discovery of her medical records. Because Plaintiff seemingly has ignored Defendant's requests for a HIPAA release, it appears that a Court Order is necessary to allow Southeast Georgia Health System to produce Plaintiff's records in compliance with HIPAA and to promote the discovery process in this case.

In an abundance of caution, however, the Court orders the following protections: The parties to this lawsuit are prohibited "from using or disclosing the protected health information [disclosed to Defendant] for any purpose other than the litigation" of this lawsuit. 45 C.F.R. § 164.512(e)(1)(v)(A). In addition, at the end of this litigation, the parties must return the protected health information to Southeast Georgia Health System or destroy this information, including any copies thereof. Id. § 164.512(e)(1)(v)(B).

Subject to those additional protections, Defendant's Motion to Compel Medical Records from Non-Party is hereby **GRANTED**. Counsel for Defendant is ordered to serve a copy of this Order and Defendant's original subpoena on Southeast Georgia Health System. Southeast Georgia Health System must disclose, **within ten (10) days** of receiving service of this Order, all

information relating to the medical condition of Plaintiff that is responsive to Defendant's subpoena, including medical and billing records as well as any disks containing imaging or films.

### III. Defendant's Motion to Compel Witness Statements (Doc. 50)

Defendant moves the Court for an Order compelling the disclosure of statements Plaintiff has obtained from Defendant's current or former employees or a privilege log showing the identities of such employees. (Id. at pp. 1, 3.) In the alternative, Defendant seeks an Order precluding the use of testimony from any witness not yet disclosed. (Id. at p. 3.) Defendant shows that Plaintiff generally described her witnesses as Defendant's "current and former employees" in her Initial Disclosures and that Plaintiff later refused to produce any statements from these witnesses, on the basis that the statements are "work product or trial preparation materials of Plaintiff's attorneys or other representatives." (Id. at pp. 1–2, Ex. B.) Relying on Federal Rule of Civil Procedure 26 ("Rule 26"), Defendant contends that Plaintiff had a duty to disclose the identities of any employees with information relevant to this case and to supplement those disclosures during the discovery period. (Id. at pp. 3–4 (citing Fed. R. Civ. P. 26(b)(1), (e)(1)(A)).) Defendant also asserts that Plaintiff did not properly assert a claim of privilege or protection over the statements of these employees in response to Defendant's Second Request for Production of Documents, because Rule 26 required Plaintiff to provide a privilege log—identifying the employees and the substance of their testimony—rather than a blanket objection. (Id. at pp. 3–4 (citing Fed. R. Civ. P. 26(b)(5)(A)(ii)).) Defendant goes further to suggest that Plaintiff's failure to supplement her disclosures to identify these witnesses justifies excluding their testimony at trial and that her failure to properly claim privilege or protection over their statements arguably results in a waiver thereof. (Id. at p. 4.)

Plaintiff responds that the Court should deny Defendant's Motion, because "[t]here are no witnesses who have not been disclosed by name by one or the other party to this case or their deposition taken." (Doc. 55, p. 1.) In particular, Plaintiff discusses one former employee, Isaiah Brown ("Brown"), and maintains that she gave Defendant notice of Brown's role as a potential witness in a Reply brief filed September 11, 2014. (Id. (citing Doc. 16).) Plaintiff avers that her counsel obtained a statement from Brown in an affidavit dated August 8, 2014, which Plaintiff intends to use at the summary judgment stage and which is protected from discovery as trial-preparation material until that time. (Id.) Plaintiff also states that, in any event, Defendant deposed Brown on October 23, 2014, for the purposes of a different case—a loss of consortium case against Defendant in state court, the companion of which, Pate v. Winn-Dixie Stores, Inc., 2:13-cv-166 (S.D. Ga. Oct. 27, 2014), is currently pending before this Court. (Id.)

Pursuant to Rule 26, a party must set forth in its initial disclosures "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). Additionally, a party must serve pretrial disclosures that include "the name and, if not previously provided, the address and telephone number of each witness" that the disclosing party may call at trial, other than solely for impeachment. Fed. R. Civ. P. 26(a)(3)(A)(i). A party who has made an initial or pretrial disclosure must supplement or correct its disclosure "(A) in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court." Fed. R. Civ. P. 26(e)(1). A party who "fails to provide information or identify a witness as required by Rule 26 . . . is not

allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

In addition to initial and pretrial disclosures, Rule 26 allows parties to request discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents . . . and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). However, a party generally may not obtain discovery of any documents "prepared in anticipation of litigation or for trial by or for another party or its representative," which includes the party's attorney. Fed. R. Civ. P. 26(b)(3). A party seeking to withhold information on the basis that it is subject to protection as trial-preparation material must "(i) expressly make the claim; and (ii) describe the nature of the documents [or] communications . . . not produced or disclosed—and do so in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). The party requesting discovery may move for an order compelling production or an answer if a party gives an incomplete response or answer to its discovery request. Fed. R. Civ. P. 37(a)(3)(B)(iv), (a)(4).

As an initial matter, if Plaintiff has identified any current or former employees with discoverable information that she has not specifically disclosed, she must supplement her Initial Disclosures to reflect these developments. While Plaintiff's Response to the instant Motion only mentions having obtained a statement from Brown, Plaintiff represents that she "gave Defendant notice on September 11, 2014, that Isaiah Brown is a witness" and that "[t]here are no witnesses who have not been disclosed by name by one or the other party to this case." (See Doc. 55, p. 1.) Notably, Plaintiff alleges to have identified Brown as a potential witness in a September 11, 2014 Reply brief on a previous Motion to Compel, in which Plaintiff discussed and attached an

affidavit of Brown taken for the Pate case, 2:13-cv-166. (Doc. 16, p. 5, Ex. A.) At the time of filing the Reply brief, Plaintiff already had obtained a separate affidavit from Brown for use in this case, but Plaintiff's Reply did not mention that affidavit, much less imply that Brown would provide information or testimony in this case. (See id.; Doc. 55, p. 1.) Plaintiff's Reply brief did not give adequate notice of Brown as a potential witness with discoverable information in this case, and the Court cautions Plaintiff that any other employee similarly "disclosed" has not been clearly identified as a potential witness. While Plaintiff's Response to the instant Motion now obviates supplemental disclosures as to Brown, Plaintiff must supplement her disclosures as to any other employee not yet sufficiently identified as a potential witness. Furthermore, if Plaintiff intends to call Brown or any other employee as a witness at trial, Plaintiff's pretrial disclosures also must be clear to this end. To the extent that Plaintiff needs to make any supplemental disclosures, Plaintiff must do so within the extended discovery period in a timely manner such that Defendant has ample opportunity to depose or obtain statements from any individual then identified.[2] A failure to disclose any potential witness will preclude Plaintiff from using such an individual to supply evidence on a motion, at a hearing, or at trial. The Court, however, declines at this time to find that the testimony of any witness not yet identified must be excluded at trial.

As to the statements obtained from potential witnesses, if Plaintiff contends those statements are protected from disclosure by the work product doctrine, she need not produce these statements in response to Defendant's Second Request for Production of Documents at this time. While the statements of Defendant's current and former employees are relevant to the parties' allegations of negligence and contributory negligence, it appears that these statements could be protected from discovery as trial-preparation materials. See Hickman v. Taylor, 329

---

[2] Plaintiff notes that Defendant deposed Brown on October 23, 2014, for the purposes of the state-court corollary to Pate, 2:13-cv-166. (Doc. 55, p. 1.) The Court declines to determine, at this time, whether that deposition would be admissible in this case.

15

U.S. 495, 508 (1947) (finding "oral and written statements of witnesses" obtained by a party's counsel in anticipation of litigation to be protected from discovery under Rule 26). However, the Court cannot determine whether these statements are, in fact, protected, because Plaintiff's discovery response fails to describe the statements or other documents withheld in a manner that permits any meaningful evaluation of Plaintiff's claim of protection. See Fed. R. Civ. P. 26(b)(5)(A) (requiring that a claim of privilege or protection "describe the nature of the documents . . . not produced or disclosed—and do so in a manner that . . . will enable other parties to assess the claim"). Plaintiff's conclusory assertion that the "documents contain[ ] information that constitutes the work product or trial preparation materials of Plaintiff's attorneys" (Doc. 50, Ex. B, p. 2) has left Defendant, and the Court, unable to discern what documents Plaintiff is withholding and whether Plaintiff's claim of protection is legitimate.

Because the Court cannot evaluate the privileged nature of the witness statements at this time, the Court declines to compel Plaintiff to produce the statements to Defendant. The Court also declines to find that Plaintiff waived any protection, because Plaintiff's failure to respond completely was not sufficiently egregious so as to justify such an extreme sanction. See In re RDM Sports Grp., Inc., 277 B.R. 415, 424 (N.D. Ga. 2002) ("[W]aiver of privilege is the most extreme sanction that a court can impose for failure to follow required procedure, and courts should reserve it for cases of unjustifiable delay, inexcusable conduct, and bad faith in responding to discovery requests." (internal quotation marks omitted) (citing Moore's Federal Practice and Procedure § 26.90[1])).

However, to the extent that Plaintiff claims that any witness statements in her possession are privileged or protected from disclosure, she must provide Defendant a privilege log that identifies each statement and that complies with the requirements of Rule 26. See Fed. R. Civ. P.

26(b)(5)(A). In order that any disputes over the protection of any such statements may be timely resolved, Plaintiff is hereby ordered to provide Defendant with such a privilege log **within ten (10) days** of the date of this Order.

Based on the foregoing, Defendant's Motion is **DENIED** to the extent that it seeks to exclude the trial testimony of any witness not yet identified and to compel the production of any statement that Plaintiff has obtained from a witness. Defendant's Motion is **GRANTED** insofar as Plaintiff must produce a privilege log disclosing the nature of the witness statements withheld and must do so in a manner that, without revealing information itself privileged or protected, will enable Defendant to assess the claim of privilege or protection.

### IV. Defendant's Motion for Protective Order as to Subpoenas (Doc. 52)

Defendant moves the Court for a protective order quashing or significantly modifying Plaintiff's subpoenas directed to Dr. Morales, who performed an independent examination of Plaintiff at Defendant's request, and Southern Orthopaedics, Dr. Morales's professional corporation. (Id. at pp. 1, 4 (citing Fed. R. Civ. P. 26, 45(d)).) Specifically, Defendant contends that Plaintiff's requests to Dr. Morales are unduly burdensome, because they seek the production of confidential information that is outside the scope of discovery: (1) "the last fifty reports of independent medical examinations and medical document reviews prepared by Dr. Morales"; (2) "the last ten reports of independent medical examinations and medical document reviews where Dr. Morales agreed with the diagnosis made by the injured person's treating physician"; and (3) "the last ten reports of independent medical examinations and medical document reviews where Dr. Morales agreed with the causation determination made by the injured person's treating physician." (Id. at pp. 2–4.) Defendant also challenges Plaintiff's subpoena to Southern Orthopaedics as containing "verbatim repetitions of the requests to Dr. Morales personally,

17

requiring an unduly burdensome duplication of efforts." (Id. at p. 4) Defendant has attached to its Motion copies of the subpoenas, which were unsigned when delivered to Defendant via e-mail on December 29, 2014. (Id. at Ex. A.)

In her Response, Plaintiff urges the Court to deny Defendant's Motion, in part because Defendant never responded to the December 29, 2014 e-mail or otherwise made any good faith effort to confer with Plaintiff's counsel before filing the instant Motion. (Doc. 53, p. 1 (citing L.R. 26.5).) Moreover, Plaintiff alleges that she never signed and served the subpoenas on Dr. Morales and Southern Orthopaedics, which Defendant would have learned had it contacted Plaintiff's counsel to resolve this dispute. (Id. at pp. 1–2.)

Defendant filed a Reply explaining that it filed the instant Motion believing that Plaintiff would serve the subpoenas and that it needed to file any discovery motion before the imminent discovery deadline. (Doc. 56, pp. 1–2.) Defendant "concede[s] that its Motion . . . is moot, provided Plaintiff has no intention to serve the disputed subpoenas, as she hints but does not affirmatively state in her Reply." (Id. at p. 2 (internal quotation marks omitted).) Defendant, therefore, amends its request unto the Court as follows: "that the Court enter a Protective Order or, if Plaintiff does not intend to serve the contested subpoenas, dismiss the Motion as moot." (Id.)

Rule 26, which also governs protective orders, states in pertinent part that "[a] party or any person from whom discovery is sought may move for a protective order." Fed. R. Civ. P. 26(c)(1). Rule 26 requires that such motion "include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Id. The Local Rules of this Court echo Rule 26: "Counsel are reminded that Fed. R. Civ. P. 26(c) and 37(a)(1) require a party seeking a protective order or

18

moving to compel discovery to certify that a good faith effort has been made to resolve the dispute before coming to court." L.R. 26.5. The Court, in turn, may issue the protective order "for good cause" and to prevent "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Defendant's Motion contains no certification that Defendant conferred with Plaintiff before filing, and the parties do not dispute that Defendant, in fact, never attempted to do so. Moreover, it appears that Defendant still had not conferred with Plaintiff upon filing its Reply, as Defendant expresses uncertainty as to Plaintiff's intentions to serve the subpoenas in the future and purports to make its Motion dependent on those intentions. Based on Defendant's failure to attempt to consult with Plaintiff at any time regarding this dispute, the Court will not entertain its premature arguments and, therefore, **DISMISSES** its Motion. Even so, Plaintiff is reminded of her obligation to give prior notice to Defendant in the event that Plaintiff seeks to serve subpoenas on Dr. Morales and Southern Orthopaedics during the extended discovery period. See Fed. R. Civ. P. 45(a)(4). If Defendant objects to the scope of those subpoenas at that time, Defendant must attempt in good faith to resolve the dispute with Plaintiff before asking the Court to do so.

## CONCLUSION

For the reasons and in the manner set forth above, Defendant's Motion to Compel Medical Records from Non-Party (Doc. 44) is **GRANTED**; Defendant's Motion to Compel Witness Statements (Doc. 50) is **GRANTED IN PART and DENIED IN PART**; Defendant's Motion for Extension of Time to Obtain Additional Records in Response to Subpoenas (Doc. 51) is **GRANTED**; and Defendant's Motion for Protective Order as to Subpoenas (Doc. 52) is **DISMISSED**.

**SO ORDERED**, this 6th day of March, 2015.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA